IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| LAMARCUS WASHINGTON,<br><br> Plaintiff,<br><br>v.<br><br>WEXFORD HEALTH, CHRISTINE VINYARD, JANE DOE #1, JANE DOE #2, and JANE DOE #3,<br><br> Defendants. | Case No. 25-cv-366-NJR |

# MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

  Plaintiff LaMarcus Washington, an inmate of the Illinois Department of Corrections who is currently incarcerated at Illinois River Correctional Center, brings this action pursuant to 42 U.S.C. § 1983 for deprivations of his constitutional rights while at Centralia Correctional Center. Washington's Complaint (Doc. 1) was dismissed without prejudice for failure to state a claim, but he was granted leave to file an amended pleading (Doc. 9). In the Amended Complaint (Doc. 10), Washington alleges that Defendants were deliberately indifferent to his medical needs in violation of the Eighth Amendment.

  This case is now before the Court for preliminary review of the Amended Complaint pursuant to 28 U.S.C. § 1915A. Under Section 1915A, the Court is required to screen prisoner complaints to filter out non-meritorious claims. *See* 28 U.S.C. § 1915A(a). Any portion of a complaint that is legally frivolous, malicious, fails to state a claim upon

1

which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief must be dismissed. 28 U.S.C. § 1915A(b).

## **The Amended Complaint**

In late March 2024, Washington went on a hunger strike to protest other medical issues unrelated to this lawsuit (Doc. 10, p. 6). As part of the hunger strike protocols, nurses saw Washington on a daily basis and issued his medication to him. On March 27, 2024, Jane Doe #1 Nurse brought his medication to him during her morning rounds (*Id.*). Washington noticed that the medication was not his normally prescribed Amlodipine, 5 mg tablet (*Id.*). Washington informed Jane Doe #1 that the medication was not correct, but she responded that it was blood pressure medication, and it was the medication that she had for him. When he questioned her again, she noted that the doctor must have changed the prescription because the medication provided, Coreg, was the medication that she had down for him (*Id.*).

On March 28, 2024, Washington informed Jane Doe #1 that his head was hurting, and he was suffering from chest pains since taking the new medication (Doc. 10, p. 7). Jane Doe #1 just nodded her head and moved on with the distribution of medication to the unit. Washington refused to take the prescribed medication (*Id.*). Later that same day, he informed an officer that he was dizzy and had chest pains. Washington was escorted to the healthcare unit where his blood pressure was measured at 152/102 (*Id.*).

On April 1, 2024, Washington went to the med line to receive his packet of blood pressure medication that he would keep on his person (Doc. 10, p. 7). Jane Doe #1 gave him a 30-pill packet of Coreg, 6.2 mg (*Id.*). He again informed Jane Doe #1 that he

normally received Amlodipine, 5 mg, and inquired about the accuracy of his medication (*Id*.). Jane Doe #1 indicated that she was positive that he was prescribed Coreg instead of Amlodipine (*Id*.). Washington started taking the Coreg twice a day (*Id*. at p. 8).

Washington later spoke to Christine Vinyard as she made rounds through the unit (Doc. 10, p. 8). He expressed concerns about his medications and his condition (*Id*.). Vinyard failed to note his concerns and merely instructed Washington to submit a medical request slip (*Id*.). He tried to inform Vinyard that he had already submitted several medical slips, but Vinyard walked away. Through April and May 2024, Washington submitted several additional medical request slips (*Id*. at p. 9). He continued to complain about the accuracy of his medication as well as his dizziness, headaches, and chest pains (*Id*.). Washington alleges that Wexford Health has a policy requiring inmates to submit three medical request slips regarding the same medical issue before they are allowed to see a doctor for the issue (*Id*.).

On May 9, 2024, a medical code was called because Washington fainted in his housing unit (Doc. 10, p. 9). Prior to fainting, Washington notified an officer that he was dizzy, having chest pains, and felt weak (*Id*.). The following day, Washington went on a hunger strike due to the issues with his medication and medical condition (*Id*. at p. 10). He informed a lieutenant that he needed to speak with the warden or medical director Christine Vinyard (*Id*.). Vinyard failed to speak to him (*Id*.). After ending his hunger strike, Washington was provided another packet of Coreg (*Id*.). He continued to submit medical request slips about his symptoms and submitted requests to speak directly with Vinyard (*Id*.).

3

On May 28, 2024, Washington spoke to Jane Doe #2 Nurse during a blood pressure check (Doc. 10, p. 10). He informed Jane Doe #2 about his concerns with his medication because she was the one that recently issued him a packet of Coreg (*Id*.). He informed her of his dizziness, headaches, and chest pains (*Id*. at p. 11). He also informed Jane Doe #2 that he previously took Amlodipine with no symptoms (*Id*.). Jane Doe #2 indicated that she would speak with the doctor but directed Washington to continue taking Coreg (*Id*.). Washington continued to submit medical request slips.

On June 26, 2024, Washington participated in a routine hearing screening (Doc. 10, p. 12). He saw Christine Vinyard and spoke to her about his concerns with his medication (*Id*.). Vinyard stated that she would take a look at his medical records but told him to submit a medical request slip to see a doctor (*Id*.). Washington informed her that he submitted several medical request slips, but they were not being addressed (*Id*.). Vinyard simply shook her head in response but did not provide him with any additional information (*Id*.).

On July 17, 2024, Washington transferred to East Moline Correctional Center (Doc. 10, p. 12). During the transport, he informed officers that he was experiencing chest pains, dizziness, and headaches (*Id*.). Upon arrival at East Moline, he was sent to the healthcare unit for evaluation (*Id*. at p.1 3). Medical staff noted that his blood pressure was 180/102. They inquired about Washington's current medication. He handed the nurse his packet of Coreg. The nurse informed Washington that there was no order for the medication in his chart and that he should have been receiving Amlodipine, 10 mg

and HCTZ, 12.5 mg. Nursing staff admitted Washington to the healthcare unit for his condition, and he filed a grievance and a request for medical records (*Id*. at p. 14).

After receiving his medical records, Washington learned that Jane Doe #3 Nurse was the nurse documenting his medications in July 2024 (Doc. 10, p. 14). Washington alleges that she discovered the medication error while updating his medical chart but failed to correct the chart. She also failed to contact Washington or any other staff about the medication issues. As a result, Washington continued to take the wrong medication until his transfer (*Id*.). Washington alleges that Jane Doe #3 knew he had received the wrong medication but failed to take action to correct the error (*Id*. at pp. 14, 34).

## Discussion

Based on the allegations in the Amended Complaint, the Court designates the following counts:

> **Count 1:** **Eighth Amendment deliberate indifference to medical needs claim against Christine Vinyard, Jane Doe #1, Jane Doe #2, and Jane Doe #3 for giving Washington the wrong blood pressure medication.**
>
> **Count 2:** **Eighth Amendment deliberate indifference to medical needs claim against Wexford Health for delaying care for Washington through its policy requiring the submission of multiple request slips before seeing a doctor.**

The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. **Any other claim that is mentioned in the Amended Complaint but not addressed in this Order should be**

**considered dismissed without prejudice as inadequately pled under the *Twombly* pleading standard.**[1]

At this stage, Washington states a viable claim for deliberate indifference against Christine Vinyard and Jane Doe #'s 1-3. He alleges that he spoke to Vinyard, Jane Doe #1, and Jane Doe #2 on multiple occasions about his symptoms and his concerns about his medications, but they instructed him to continue with the medication and submit medical request slips. As a result, Washington continued on the wrong medicine for several months. Washington also alleges that Jane Doe #3 knew that he was taking the wrong medication and documented the error in his medical records. But she failed to inform Washington or any other medical staff about the error, and she did not provide Washington with the correct medication. Thus, Count 1 shall proceed against Christine Vinyard and Jane Doe #'s 1-3. To help identify the unknown nurses, the Court **ADDS** the current warden of Centralia, Jeffrey Wehking (official capacity only), for the sole purpose of responding to discovery aimed at identifying the Jane Doe Nurses.

Washington also states a viable claim against Wexford in Count 2 for its medical request slip policy. Washington alleges that Wexford's policy required him to submit several request slips before actually receiving medical care and caused delays in his care. *Howell v. Wexford Health Sources, Inc.*, 987 F.3d 647, 653-4 (7th Cir. 2021); *Woodward v. Corr.*

---

[1] *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face").

*Med. Serv. of Ill., Inc.*, 368 F.3d 917, 927 (7th Cir. 2004). Thus, Count 2 shall proceed against Wexford Health.

## Disposition

For the reasons stated above, Count 1 shall proceed against Christine Vinyard and Jane Doe #'s 1-3. Count 2 shall proceed against Wexford Health. Jeffrey Wehking is **ADDED**, in his official capacity only, to identify the Jane Does.

The Clerk of Court shall prepare for Christine Vinyard, Wexford Health, and Jeffrey Wehking (official capacity): (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons) and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Amended Complaint, and this Memorandum and Order to each defendant's place of employment as identified by Washington. If a defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that defendant, and the Court will require that defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a defendant can no longer be found at the work address provided by Washington, the employer shall furnish the Clerk with the defendant's current work address, or, if not known, defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Amended Complaint and shall not waive filing a reply pursuant to 42 U.S.C. Section 1997e(g). **Pursuant to Administrative Order No. 244, Defendants need only respond to the issues stated in this Merit Review Order**.

Because Washington's claims involve his medical care, the Clerk of Court is **DIRECTED** to enter the Court's standard HIPAA Qualified Protective Order.

If judgment is rendered against Washington, and the judgment includes the payment of costs under Section 1915, he will be required to pay the full amount of the costs, regardless of whether his application to proceed *in forma pauperis* is granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Finally, Washington is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **14 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

DATED:  July 28, 2025

_____
**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**

## Notice to Plaintiff

The Court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your Amended Complaint. After service has been achieved, the defendants will enter their appearance and file an Answer to your Amended Complaint. It will likely take at least **60 days** from the date of this Order to receive the defendants' Answer, but it is entirely possible that it will take **90 days** or more. When all the defendants have filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions, to give the defendants notice and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. **Plaintiff need not submit any evidence to the Court at this time, unless specifically directed to do so.**